ADDISON
January,
1830.

PROPRIETORS of the undivided lands in the eight thousand-acres tract, in Addison, *vs.* JARED BISHOP.

Where an action of *trespass* was brought by the proprietors of an undivided tract of land lying within the chartered limits of a town, and which was designated in the declaration as a distinct parcel of land,—it was held, that the original charter of the town granting to the proprietors thereof the lands within the limits of said town was not sufficient evidence to show who were the proprietors of the undivided tract in question.

In such case, when the plaintiffs have proved a title in themselves, the defendant will be allowed to show a title in certain of the proprietors of an adjoining town, and that certain individuals, claiming a title under those proprietors, had released to the defendant the trespasses complained of.

Action of *trespass quare clausum fregit*. Plea,—*general issue*, and notice, in conformity to the statute, that the defendant would rely in his defence on a certain release or discharge in writing of all the trespasses or injuries done by the defendant on said undivided lands, bearing date the 5th day of June A. D. 1829, acknowledging a consideration paid of twenty-five dollars, and signed by *James Bushnell* and *Milo J. Bushnell*, two of the proprietors of said undivided lands at the time the said supposed trespasses were committed, and at the time of the commencement of said suit.

On the trial in the county court, June term, 1829, TURNER J. presiding, the plaintiffs offered, as evidence, to prove the propriety of said 8000 acres,—1. A copy of the original charter of the town of *Addison*, bearing date the 14th day of October, 1761, specifying the names of the original proprietors of said town. 2. They introduced witnesses whose testimony tended to prove they

had known what was reported to be the lines of the said 8000
acres from 20 to 40 years, and that the said supposed trespass was committed within the lines of the said 8000 acres, and on the
undivided lands of the same. 3. They introduced witnesses whose testimony tended to prove the extent and injury done by said supposed trespasses.

To all which evidence offered the defendant objected : 1. To the copy of the charter of the town of *Addison*, because the said 8000 acres is set forth in plaintiffs' declaration as a distinct tract of land in said *Addison*, and the proprietors thereof as distinct proprietors of the same. 2. That the existence and propriety of the said 8000 acres tract should appear of record, and not by the testimony of witnesses : which objections were overruled by the court.

The defendant offered, as evidence, 1. the release or discharge in writing of the said *James* and *Milo J.* before specified.

2. He offered the town and proprietors' records of the town of *Addison*, and the town and proprietors' records of the town of *Panton*, and a copy of the original charter of the said town of *Panton*; all tending to prove, that from the dates of the charters of said towns to the year 1774, a dispute existed between the proprietors of said towns relative to the division line between the same ;—That the first allotment or division was made by the proprietors of the town of *Panton*, in the supposed limits of said *Panton*, about the year 1762, called the home lots, and commenced on what is now the south line of said 8000 acres tract, and extended north on the lake shore, comprising thirty or more lots, between the south and north lines of said 8000 acres, containing 72 1-2 acres in each lot ;—That at a meeting holden by the proprietors of *Addison* on the 4th day of May A. D. 1773, a special committee of certain persons was appointed to settle the disputed line between said towns, and to act discretionary therein for and in behalf of all the proprietors aforesaid ;—That a like committee was appointed by the proprietors of *Panton*, to wit, on the 16th day of May, 1774, and with like powers, to confer with the *Addison* committee for the purpose aforesaid ;—That it was found by said committees that what is now the 8000 acres, and allotted as aforesaid by the proprietors of *Panton*, was within the charter limits of *Addison* ;—That on the 17th day of May, 1774, the committee of the proprietors of *Addison* conveyed to the "inhabitants who are in *Panton*, and on the contested lands," the said 8000 acres as "a reward for duties they had done in said town ;"—That

ADDISON,
January,
1830.

Proprietors.
*vs.*
Bishop.
on the 23d of May, 1783, at a meeting of the proprietors of *Pan·ton*, it was voted to ratify and establish the settlement made by said commitees as aforesaid : and because by said settlement and conveyance it was uncertain who were entitled to hold the said 8000 acres,—Therefore, it was voted that those persons, their heirs or assigns, who were at the time of said settlement, or who then were seized in their own right of all or any of the numbers of the lots of said allotment between nos. 1 and 29 inclusive, except nos. 20, 35 and 36, should hold the same ; and the same being deducted from the said 8000 acres, the remainder should be equally divided between the owners of lots nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, &c. ; and that said acts and doings had been acquiesced in by all persons to that time. Also, that by said allotment so made by the proprietors of *Panton*, lot no. 10 therein was drawn to the right of *Joseph Hanchet*, one of the original proprietors of *Panton*.

The defendant also introduced as evidence a deed executed by said *Hanchet* of said lot no. 10, described as situate in *Panton*, to *David Vallance*, bearing date the 29th day of August 1764, and duly acknowledged and recorded in the records of *Panton*, January 12, 1784. The defendant also offered as evidence a copy of the records of *Addison* to prove that *James Bushnell*, one of the signers of said release or discharge, was joined in marriage on the 26th day of December, 1799 to *Rachel Vallance*, who was the daughter of said *David Vallance*. The defendant also offered the records of the probate court for the district of *Addison* tending to prove that a certain portion of the real estate of said *David Vallance*, prior to his decease, was devised by him to the said *Rachel Bushnel* ;—also, that in the distribution of said *David Vallance's* estate, and the distribution of *Almond Vallance's* estate, the son of said *David*, and who deceased after his said father, to wit, on the 22d day of September, A. D. 1807, the undivided right in said 8000 acres belonging to lot no. 10, of the right of *Joseph Hanchet*, was set off to the said *Rachel Bushnell*. The defendant also introduced evidence tending to prove that said *Rachel Bushnell* had deceased ; that the said *James*, the signer of said release, was her husband, and that the said *Milo J.*, the other signer of said release or discharge, is the issue and son of said *James* and *Rachel*.

To all which evidence offered by the defendant the plaintiffs objected : which objection was sustained by the court, and the same was rejected.

Addison,
January,
1830.

Proprietors
vs.
Bishop.

The court charged the jury that the copy of the original char-
ter of *Addison* was sufficient to show the propriety of said 8000
acres, and the parol testimony sufficient to show the existence and
lines of said lot; and a verdict was returned for the plaintiffs.
The defendant excepted to the opinion of the court, and moved
for a new trial on the ground of an alleged error in said opinion.

*Argument for the defendant.*—The defendant's counsel con-
tended, That the 8000 acres tract in *Addison* being declared upon
as a distinct tract of land in that town, it required other evidence
than the original charter of the town to show who were the pro-
prietors of the 8000 acre tract :—That the existence and limits of
the said tract of land should have been substantiated by record
and not by parol proof :—That the various records and charter of-
fered by the defendant, as well as the evidence offered to show
that *James Bushnel* and *Milo J. Bushnel* were proprietors under
*Rachel Bushnel*, as is stated in the case, all tending to prove a
title in said *James* and *Milo J.* as proprietors of the undivided
lands in said tract at the time of said trespasses, and at the com-
mencement of the suit, was proper evidence to go to the jury :—
Also, that the release of the said *James* and *Milo J.* should have
passed as evidence to the jury under the charge of the court, that
if the jury found that said *James* and *Milo J.*, or either of them,
were proprietors, as aforesaid, at the times aforesaid, and that they
executed the said release according to its tenor, it would bar
the plaintiffs' action. *Austin et. al. vs. Hall,* 13 *Johns. R.* 286.

*Argument for the plaintiffs.*—The statute *(p. 156)* enables
the proprietors of any common and undivided lands to prosecute
or defend any action relating to their respective interests. This
statute, it is to be observed, is not confined to the proprietors of
townships, but relates to any case where there is a proprietary of
any distinct and definite tract of undivided land, no matter in
what manner the proprietary may come into existence. It was in
evidence, and, indeed, appears from the defendant's showing, that
there was a tract of common and undivided land in *Addison*,
known and distinguished by the name of the 8000 acres tract.
This tract was originally in dispute with *Panton*, and, although
ultimately found to belong to *Addison*, seems to have been ori-
ginally treated by the proprietors as standing upon a different foot-
ing from lands confessedly theirs ; and, even to this day, has been
treated as a tract in which they, as a proprietary, had a common

ADDISON,
January,
1830.

Proprietors
vs.
Bishop.

interest. They, therefore, as the proprietors of the tract, are competent to sustain an action as well as the proprietors of a township. The case is analogous to the gores which have been granted to make up deficiency in the original grants. In other words, this being a distinct tract, they may as well be described as the proprietors of the tract as proprietors of the township.

But the objection is not that the plaintiffs are not competent to sustain an action : the case admits throughout that this is a distinct proprietary. But the objection is, that the evidence offered did not support their title. This objection is easily answered. Although the tract has been kept separate and distinct from the other lands of the proprietary, yet, as it is confessedly within the charter limits of *Addison*, the proprietors of the tract are *prima facie*, at least, the proprietors of *Addison*. And so, *e converso*, the proprietors of *Addison* are the proprietors of the tract in question. Whatever style they assume, the charter was unquestionably good evidence of their title. In short, they derived their title to the land from the charter of *Addison*, although, in consequence of the dispute with *Panton*, the tract has become a separate and distinct subject of their common ownership, and in suits relating to it, they style themselves the proprietors of the 8000 acres tract.

2. The testimony offered by the defendant was wholly inadmissible. 1st. As to the records of *Addison* :—It does not appear that the committee of the proprietary were authorized to convey away any lands belonging to the corporation ; nor that any conveyance was actually made by them ; nor that any person was designated as taking under the supposed conveyance. 2dly. As to the records of *Panton* :—The lands being found within the charter of *Addison*, the proprietary of *Panton* had no interest in, or controul over, them. Their proceedings were utterly void. The title of *Hanchet* being derived from that source is void also.

But if the compromise with *Panton* is deemed to have vested the tract in question in a new set of proprietors, then the first objection is obviated, and the suit is correctly brought. It is certainly immaterial to the purposes of this suit of whom this corporation consists, whether of the proprietors of Addison, or others. In this point of view the question recurs to the discharge and the title of those who gave it. And here the objection arises again, that if a new proprietary was created, it was distinct from that of *Panton*, and the proceedings of the latter proprietary were, of course, of no effect.

ADDISON,
January,
1830.

Proprietors
*vs.*
Bishop.

Finally, admitting that the *Bushnels* were interested in the proprietary, still they could not bind the corporation without authority for the purpose.

WILLIAMS, J. delivered the opinion of the court.—The persons who bring this action are described as follows : "Proprietors of the undivided land in the 8000 acres tract in *Addison*," and they must show a title in themselves, and that a suit can be instituted by them by that name and description.

The evidence relied on to establish these facts was the charter of the town of *Addison* granting to the proprietors thereof the lands within the limits of said town. If this suit had been brought in the name of the proprietors of *Addison* to recover for an injury to their common and undivided lands, the evidence would have been sufficient. The grantees named on the back of the charters of the several towns in this state have always been recognized as a corporation for certain purposes. Among the first acts passed by the legislature of this state were those regulating proprietors' meetings, treating the grantees or proprietors as having many of the powers of a corporation, enabling them to have their own officers, keep records of their proceedings, and to transact business in relation to their common interest. An act was passed in 1779, similar to the 3d section of the act now in force, authorizing the inhabitants of towns and other corporations to maintain and defend suits at law, which enabled the proprietors of common and undivided lands, grants &c. to sue, prosecute, and defend, any action in relation to their several trusts and interests. But this suit is not brought by the proprietors of *Addison*, but by the proprietors of a smaller tract of land included in the limits of said town : and the charter alone was clearly insufficient to show a title in the proprietors of this smaller tract.

It has been argued, that it is immaterial of whom this corporation consists ; that if the land in question does not belong to the proprietors of *Addison*, yet, if by the compromise with the town of *Panton*, the 8000 acres tract was vested in a new set of proprietors, then this suit is correctly brought by those new proprietors. This position is liable to two objections. First, the evidence of this compromise was not admitted by the court at the trial of this cause, and the plaintiffs cannot insist upon those facts to support the verdict which were objected to and rejected. But it is also liable to another objection to which the attention of the court has been called. The proprietors or owners of this tract of land are tenants

N

ADDISON,
January,
1830.

Proprietors
vs.
Bishop.

in common, not deriving their title immediately from the charter ; and they are separate and distinct from the proprietors of the town : and we do not consider that the statute before mentioned constitutes all tenants in common or joint owners of lands a corporation, or that it enables them to maintain a suit in relation to their common interests, describing themselves as proprietors of the common land : but we think the statute has relation to those proprietors alone who are usually denominated as such in consequence of their being grantees of lands chartered as a township, and who are enabled or authorized to hold proprietors' meetings. To extend it further is not required either by the letter or spirit of the statute.

Another question has been made in this case in relation to the testimony offered by the defendant and rejected by the court. If it was considered by the court that a title had been proved in the plaintiffs, then the evidence offered by the defendant ought to have been admitted. The title of the plaintiffs, according to the opinion of the court on the trial, was in them as proprietors of *Addison*. The evidence offered tended to show a title in certain of the proprietors of *Panton*, and that *James* and *Milo Bushnel*, who derived a title under these proprietors of *Panton*, had released to the defendant the trespasses complained of. If the proprietors of *Addison* from the year 1774, had ceased to claim this land, and it had been possessed and occupied by the proprietors of *Panton*, claiming a right and title thereto from the proprietors of the town of *Addison*, and this had been acquiesced in to the time of commencing the suit, the jury, from the evidence offered, would have been instructed to presume a regular conveyance from the proprietors of *Addison* to those persons who had always claimed to be, and exercised the rights of, owners of the land. This last question however is not of any importance in this case, as we are all of opinion upon the first point, that the plaintiffs were not entitled to a verdict upon the evidence exhibited.

The judgment of the county court is, therefore, reversed, and a new trial awarded.

*Woodbridge* and *Phelps*, for plaintiffs.
*Hawley* and *Bates*, for defendant.